#25613-a-DG

**2011 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

M.G. OIL COMPANY,                                                    Petitioner and Appellee,

v.

CITY OF RAPID CITY, ALAN HANKS,
in his official capacity as Mayor, RAPID
CITY COMMON COUNCIL, City Council
Members DEB HADCOCK, in her official
capacity, RON WEIFENBACH, in his
official capacity, KAREN GUNDERSEN
OLSON, in her official capacity, PATTI
MARTINSON, in her official capacity, SAM
KOOIKER, in his official capacity, RON
KROEGER, in his official capacity, LLOYD
LACROIX, in his official capacity, MALCOM
CHAPMAN, in his official capacity, AARON
COSTELLO, in his official capacity, BILL
WAUGH, in his official capacity,                              Respondents and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 15, 2010

OPINION FILED **01/26/11**

EDWARD C. CARPENTER
STEVEN C. HOFFMAN of
Costello, Porter, Hill,
Heisterkamp, Bushnell
and Carpenter, LLP
Rapid City, South Dakota

Attorneys for petitioner
and appellee.


JOEL P. LANDEEN
Assistant City Attorney
Rapid City, South Dakota

Attorney for respondents
and appellants.

#25613

GILBERTSON, Chief Justice

[¶1.] M.G. Oil Company (M.G. Oil) applied to the City of Rapid City (City) for a conditional use permit to operate a video lottery casino. The Rapid City Common Council (City Council) denied the permit. M.G. Oil next sought a writ of mandamus, seeking an order that the City Council grant M.G. Oil the permit. The circuit court issued the writ, finding that the City Council's decision to deny the permit was "unreasonable, arbitrary, capricious and an abuse of discretion." The City appeals.

**FACTS**

[¶2.] M.G. Oil filed a petition for a conditional use[1] permit to operate an on-sale liquor establishment as part of a planned video lottery casino.[2] The casino was to be located in a newly constructed strip mall on Haines Avenue in north Rapid City, zoned general commercial. Staff in the Growth Management Department for the City reviewed the application, which included circulation to City agencies. After all the agencies, including the police department, reviewed the application without

---

1. "Conditional use" is defined at SDCL 11-4-4.2 as:

    any use that, owing to certain special characteristics attendant to its operation, may be permitted in a zoning district subject to the evaluation and approval of the approving authority specified in § 11-4-4.1. A conditional use is subject to requirements that are different from the requirements imposed for any use permitted by right in the zoning district.

2. On-sale liquor establishments are conditional uses in the City's general commercial zone districts. Rapid City Municipal Code § 17.18.030(17). M.G. Oil also sought to transfer a license to sell liquor to the proposed location. In order to operate a video lottery casino, the owner must have both a liquor license and a conditional use permit. This writ does not address the liquor license transfer.

-1-

objection, the staff recommended approval of the permit with stipulations.[3] The staff's report found "there is one video lottery casino that is located approximately 470 feet to the north of this property. It does not appear that this request for on-sale liquor use will constitute an undue concentration which would cause blight or deterioration or diminish land values in the surrounding area." The Rapid City Planning Commission approved issuance of the permit with the stipulations.

[¶3.] A nearby property owner, Mario Rangel, owner of Munoz/Rangel, LLC, appealed the Planning Commission's decision. The matter was placed on the City Council's agenda. At the next City Council meeting, Rangel told the City Council he wanted the City to be "supportive" of "positive" development on Haines Avenue. There was some discussion on whether the neighborhood, in particular a nearby trailer park, had received proper notification of the proposed use. Applicant Troy Erickson and City Attorney Jason Green verified M.G. Oil had completed the correct application and notification process. Alderman Ron Kroeger discussed the history of the area and the nearby trailer court. He questioned whether there would be any response from those residents as most of the trailers were rented and the tenants "wouldn't care" about a casino in the area. After more discussion, the City Council referred the appeal to the Legal and Finance Committee to allow additional time for public comment.

---

3. The stipulations required the applicant to, in part, obtain the proper building permits, maintain a minimum number of parking spaces, have the signage approved, maintain certain landscaping requirements, and comply with certain lighting and fire standards.

[¶4.] At the next Legal and Finance Committee meeting, the applicant, six proponents, and two opponents commented on the proposed casino. Erickson reiterated that he had complied with all requirements and would not serve alcohol at his casinos if a liquor license was not required by law. Three members of M.G. Oil's security team, Dan Nagel, Bill Floor, and Wayne Jackson, discussed M.G. Oil's security measures.[4] Collectively they stated that M.G. Oil employed at least six security officers to ensure the safety of both employees and customers of M.G. Oil's 25 businesses in the area. Three to four officers are on patrol every night, responding to calls and working with police to keep all of M.G. Oil's establishments orderly. Security officers issue written warnings, keep a log of their enforcement activities, and maintain a "picture book" of over 600 "unwanted" customers. At least two of the men had a career history in law enforcement. The men also noted that no other casinos in the area had this level of security. Two other M.G. Oil employees, Cheryl Hovick and Penny Jones, spoke in support of the permit. The women stated that the security made their customers feel safe and that they did not tolerate inappropriate behavior in the locations where they worked. Jones also noted that she had always lived in north Rapid City and noticed how much it had "cleaned up" in the past few years. A resident of the nearby trailer court, Heather Turango, also supported the permit. She stated that she had lived there for over two years and was "appalled and outraged" at Alderman Ron Kroeger's comments at the City Council meeting regarding the trailer court. She stated that, contrary to

---

4. No transcript of the meetings was provided. The record of the meetings consists solely of video recordings.

his statements, 70 of the 75 trailers were owner occupied and residents were working as a community to improve the neighborhood.

[¶5.] Two people at the Legal and Finance Committee meeting opposed the permit. Jami Al-Haj owns property across from the current casino on Haines Avenue, also owned by M.G. Oil. She testified she was concerned because she had experienced an increase in vandalism, break-ins, and littering since around the time the current casino had opened. She stated she did not know if the problems she was experiencing were directly a result of the casino, but was concerned that the problems may increase if another casino opened nearby. She commented that at times she had safety concerns for herself and her customers at night and that she did not want anything to harm the value of her property. James McCoy, a member of the neighborhood watch and North Rapid Civic Association, also spoke against the permit. He stated it had taken the Association 14 years to clean up the area and there had been more trouble recently. Alderman Kroeger discussed living in the area for 32 years and the improvement during that time. He stated the area did not need another casino only one-and-a-half blocks away from an existing casino. Another alderman requested that Rapid City Chief of Police Allender conduct an analysis of the relation between calls to the police for service and casinos. In order to receive this information from the Chief of Police, the application was returned to the City Council without recommendation.

[¶6.] At the City Council's next meeting, six people commented in favor of the permit and two commented against. While five of the proponents were the same as before, there was one additional person who spoke in favor of M.G Oil's request.

The two opponents had not given public comment at the previous meetings. Joan Kettlewell, a nearby business owner, expressed her concern that a casino right off a major exit would not give a good impression of the city. She also worried about having four liquor licenses within two blocks. Alice McCoy testified she was the Vice President of the North Rapid Civic Association and that a poll of her members found a majority were against this type of business. Police Chief Allender reported that, having conducted an analysis of the calls for police assistance to casinos in Rapid City, he thought the results were "statistically neutral." Rapid City had 130 casino licenses, and 47 of those casinos were housed in their own buildings. Of those 47 casinos, the current Haines Avenue casino made 51 calls the previous year, which was the fourth highest. The record indicates three letters were also submitted to the City Council expressing opposition to the permit.

[¶7.] A council member made a motion to deny the conditional use permit. City Attorney Jason Green told the City Council that the ordinance[5] [as it relates to conditional use permits] was very specific and that the City Council would have to

---

5. Rapid City Municipal Code § 17.50.185 provides:

An on-sale liquor establishment must be issued if:
   A. The requested use will not adversely affect the use of any place used for religious worship, school, park, playground or similar use within a 500-foot radius.
   B. The requested use is sufficiently buffered with respect to residential areas so as not to adversely affect the areas.
   C. The proposed use will not create an undue concentration of similar uses, so as to cause blight, deterioration or substantially diminish or impair property values.
   D. The proposed use complies with the standards of §§ 5.12.140 and 17.54.030 of this code.

make a finding based on the ordinance in order to deny the application. He told the City Council he believed that subsection C of the ordinance was the most relevant to the comments they had heard. Alderman Ron Weifenbach stated he did not understand how the City Council could find that two casinos on the street would constitute an "undue concentration," especially given the more concentrated casinos in other parts of town. Alderman Kroeger stated he had been on the City Council for 13 years and had denied applications before and would deny this license because he believed it would cause blight in the area and diminish property values. Alderman Karen Olson stated she would vote to deny the application because the neighborhood is entitled to be safe and see positive growth. She also commented she believed that the members of City Council were required to use their discretion as elected officials to determine if there was an undue concentration in a particular area and it did not matter if there were more casinos in other areas.

[¶8.] The City Council voted 8-1 to deny the conditional use permit, with one alderman abstaining due to a personal conflict. The grounds for the denial were that the proposed use would cause an undue concentration of similar uses, so as to cause blight, deterioration or substantially diminish or impair property values.

[¶9.] M.G. Oil sought a writ of mandamus against the City. The circuit court issued the writ, ordering the City Council to approve the issuance of a conditional use permit to M.G. Oil to allow an on-sale liquor establishment with video lottery, subject to the stipulations set forth by the Rapid City Planning Commission.

[¶10.]     The City appeals, raising the following issue:

> Whether the circuit court abused its discretion in finding that the City Council acted arbitrarily and capriciously and abused its discretion when it denied the issuance of a conditional use permit to M.G. Oil.

## STANDARD OF REVIEW

[¶11.]     We review a circuit court's issuance of a writ of mandamus for an abuse of discretion. *Black Hills Cent. R.R. Co. v. City of Hill City*, 2003 S.D. 152, ¶ 9, 674 N.W.2d 31, 34; *Hendriks v. Anderson*, 522 N.W.2d 499, 502 (S.D. 1994) ("The granting of a writ of mandamus is not a matter of absolute right, but is vested in the sound discretion of the court.") (citing *Anderson v. City of Sioux Falls*, 384 N.W.2d 666, 668 (S.D. 1986)).

## ANALYSIS AND DECISION

[¶12.]     We begin by reviewing the remedy of a writ of mandamus. South Dakota law provides:

> The writ of mandamus may be issued by the Supreme and circuit courts, to any inferior tribunal, corporation, board, or person, *to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station;* or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.

SDCL 21-29-1 (emphasis added). In addition, SDCL 21-29-2 provides that a "writ of mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."

[¶13.]     Generally, mandamus is available to compel performance of ministerial duties. *Black Hills Cent. R.R. Co.*, 2003 S.D. 152, ¶ 14, 674 N.W.2d at 34. Mandamus is also appropriate to compel discretionary functions, provided the

-7-

particular entity abused its discretion. *Id.* "Abuse of discretion is the most deferential standard of review available with the exception of no review at all." *In re SD Microsoft Antitrust Litig.*, 2003 S.D. 19, ¶ 27, 657 N.W.2d 668, 678 (citations omitted). A standard definition of abuse of discretion has not been adopted by this Court. As early as 1932, this Court stated that "discretion must be exercised under the established rules of law, and it may be said to be abused . . . where the action complained of has been arbitrary or capricious."[6] *State v. Richards*, 61 S.D. 28, 38-39, 245 N.W. 901, 905 (1932) (citations omitted). The analysis of *Burley v. Kytec Innovative Sports Equip., Inc.,* 2007 S.D. 82, ¶ 12, 737 N.W.2d 397, 402, provides guidance. "Although we have repeatedly invoked stock definitions, the term 'abuse of discretion' defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Id.* (citing *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910). In this case, M.G. Oil alleged, and the circuit court agreed, that the decision by the City Council was an abuse of discretion because it was arbitrary and capricious.

[¶14.]     We have previously discussed the writ of mandamus as it applies to the denial of a liquor license by a city council and found it to be an appropriate remedy. *Hendriks*, 522 N.W.2d at 501; *Hanig v. City of Winner*, 2005 S.D. 10, ¶ 9,

---

6.     Other actions would also constitute an abuse of discretion, such as acting on false information or a total lack of authority. *Richards,* 61 S.D. 28, 245 N.W. at 905. However, arbitrary and capricious is the only argument that the parties address and that is applicable in this case.

692 N.W.2d 202, 205. Today we determine it to be an appropriate remedy when considering a denial of a conditional use permit.[7]

[¶15.]     In reviewing the factual record, it is clear that the circuit court did not abuse its discretion in issuing the writ of mandamus. The circuit court examined the record to determine "whether there was substantial evidence supporting [the City Council's] decision and whether the decision was reasonable and not arbitrary." The circuit court cited *Olson v. City of Deadwood*, 480 N.W.2d 770, 774-75 (S.D. 1992), for this standard. The use of the "substantial evidence" review was

---

7.     In *Hanig*, this Court reviewed the decision of a city commission's denial of a liquor license and the circuit court's affirmance. 2005 S.D. 10, ¶ 9, 692 N.W.2d at 205. In *Hanig*, we stated, "We have approved a writ for a denial of a liquor license by a city commission when its action, 'has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act[.]'" *Id.* (citing *Hendriks*, 522 N.W.2d at 501). However, in 1999 this Court stated that an "arbitrary and capricious action is: based on personal, selfish, or fraudulent motives, or on false information, and is characterized by a lack of relevant and competent evidence to support the action taken." *Coyote Flats, LLC v. Sanborn Co. Comm'rs*, 1999 S.D. 87, ¶ 14, 596 N.W.2d 347, 351 (citing *Tri Co. Landfill Ass'n v. Brule Co.*, 535 N.W.2d 760, 764 (S.D. 1995)). The language regarding what is to be considered "arbitrary and capricious" has devolved over time from *Richards*, 61 S.D. 38-39, 245 N.W. at 905, which states:

> The discretion must be exercised under the established rules of law, and it may be said to be abused within the foregoing rule where the *action complained of has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act, or where it amounts to an evasion of a positive duty, or there has been a refusal to consider pertinent evidence, hear the parties when so required, or to entertain any proper question concerning the exercise of the discretion, or where the exercise of the discretion is in a manner entirely futile and known by the officer to be so and there are other methods which if adopted would be effective.*

(emphasis added).

correct to determine whether there was substantial evidence to support the City Council's findings.[8] *Abild v. Gateway 2000, Inc.*, 1996 S.D. 50, ¶ 6, 547 N.W.2d 556, 558; *Therkildsen v. Fisher Beverage*, 1996 S.D. 39, ¶ 8, 545 N.W.2d 834, 836. After reviewing the City Council's proceedings, the circuit court made the following findings:

> a.  There is no evidence upon which the City Council could make a determination that granting this condition[al] use would substantially diminish or impair property values.
> b.  Substantial evidence does not exist to support the decision that the granting of this conditional [use] would cause blight or deterioration to occur.
> c.  Absent such evidence, the decision of the Council is unreasonable, arbitrary, capricious and an abuse of discretion.

Upon reviewing the record, we conclude the circuit court did not abuse its discretion.

[¶16.] The language of the ordinance in this case significantly limits the discretion the City Council has in denying an application for a conditional use permit involving an on-sale liquor establishment. The ordinance states the conditional use permit "*must be issued* if . . . the proposed use will not create an undue concentration of similar uses." Another way to say this is that the permit must be issued unless the proposed use will create an undue concentration. The

---

8.  Although the circuit court was correct in reviewing to determine if substantial evidence supported the City Council's "findings," we want to be clear that a review for substantial evidence does not supplant the necessary determination that an entity's actions were arbitrary and capricious. The substantial evidence examination, discussed in detail in *Olson*, 480 N.W.2d at 774-75, looks at whether substantial evidence supports an entity's factual findings, not whether there is substantial evidence to support the action of the entity.

circuit court correctly stated that "absent this finding, or sufficient evidence to support the finding, the Council has no discretion and must allow the establishment of an on-sale liquor enterprise."

[¶17.]     At a motions hearing, the circuit court heard testimony that two stores have liquor licenses within a few blocks of the proposed location, in addition to the pre-existing Haines Avenue casino. The other two stores do not have on-sale liquor licenses. Before the City Council, one nearby business owner remarked that this would be the fourth liquor license in the vicinity. There was no additional evidence regarding the other licenses. However, there is no indication that the City Council considered those licenses to find an "undue concentration of similar uses," as it was not addressed by any City Council member. There was virtually no discussion by the City Council regarding the actual ordinance. Alderman Ron Weifenbach did question the city attorney and pose the question to the other members of the City Council, whether there was any basis to find an "undue concentration" here.[9] In the discussion following his question, Alderman Karen Olson stated she did not think it mattered what the concentration of similar uses was in other areas because the City Council had to make a judgment call on what concentration was appropriate for each area. Besides those few comments, there was no other discussion before the City Council members voted.

---

9.     Arguably, under the ordinance language and construction, the City Council was required to find an undue concentration *before* determining whether that concentration will cause blight, deterioration, or substantially diminish or impair property values. Under the language, an undue concentration of similar uses is permissible *unless* it causes blight, deterioration, or substantially diminishes or impairs property values.

[¶18.]     The opinions presented through public comment to the City Council do not satisfy the language in subsection C of the ordinance. The discussion leading up to the vote indicates that the decision by the City Council was not made based upon the criteria specified in the ordinance. The action by the City Council was factually unsupported. "[V]ague reservations expressed by [Council] members and nearby landowners are not sufficient to provide factual support for a Board decision." *Olson*, 480 N.W.2d at 775. We have also stated that "[p]redictions and prophecies by neighboring property owners that a building when completed will likely become a nuisance and annoyance . . . [cannot] serve as a legal reason for [local governments] to deny a . . . permit to persons otherwise entitled thereto." *Breckweg v. Knochenmus*, 81 S.D. 244, 133 N.W.2d 860, 866 (1965). In this case, it appears from the record that the City Council denied the permit solely based on a few neighbors' general concerns that a new casino might cause problems.

[¶19.]     The City Council did not link the public comments or any other evidence back to the ordinance language. SDCL 11-4-4.1 provides:

> A municipal zoning ordinance adopted pursuant to this chapter that authorizes a conditional use of real property shall specify the approving authority, each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, and the criteria for evaluating each conditional use. *The approving authority shall consider the stated criteria, the objectives of the comprehensive plan, and the purpose of the zoning ordinance and its relevant zoning districts when making a decision to approve or disprove a conditional use request.*

(Emphasis added.) The City Council only considered the ordinance's stated criteria at the very end of its discussion and it amounted to little more than repeating the ordinance's language as part of a motion. There was no discussion of any

comprehensive plan or its objectives. Neither did any of the City Council members talk about the purpose of the zoning ordinance. Accordingly, there is a want of the evidentiary basis the City Council is required to make by SDCL 11-4-4.1 under the ordinance in order to deny the permit. Because of the City Council's failure to indicate that it made the proper considerations, the City Council cannot establish that the circuit court abused its discretion.

[¶20.] The City Council offers an explanation for its decision without any evidence in its hearings and record to support it. There is no indication in the record that the proposed use will "substantially diminish or impair property values." One nearby business owner mentioned in her comments that a decrease in property values in the area would be an issue for her. She did not say, however, that she believed this casino would cause such a decrease. As to the remark made by Alderman Kroeger, who is a realtor, he did not mention property values in the area until after the city attorney told the City Council that he believed the City Council could make a decision based on subsection C of the ordinance. Thereafter, when Alderman Kroeger was speaking, he made a summary statement that he would vote to deny the permit because it would cause blight and diminish property values in the area. In essence, he simply repeated the language of the ordinance. The circuit court noted in its memorandum opinion that "there is no evidence of diminished property values." We agree.

[¶21.] Additionally, there is no evidence that the casino would cause blight or deterioration. Erickson testified that he was opening a "high end" casino that would serve high priced beer and have fancy décor. In the plans he presented to the

City Council, he pointed out that there was a shorter bar to deter patrons from staying for extended periods of time and no entertainment other than the video lottery. We fail to see from this factual record how a legally operated business under these circumstances will cause blight. Furthermore, the casino was to be located in a newly constructed strip mall that M.G. Oil would be leasing. There were also stipulations recommended by the Planning Commission on the quality and type of signage and landscaping for the location. Provided Erickson complied with these stipulations, there is no specific evidence in the record as to how the location of the casino in this new building would cause any "deterioration" to come to the neighborhood. The circuit court examined the evidence under various definitions of "blight," as the term is not defined in the ordinance. Neither is "deterioration" defined. The circuit court found that there was no evidence that blight or deterioration would result from the proposed casino. The court went on to state:

> [I]f the Council is applying some other standard, the [circuit court] cannot find it. The Council provides no definition; the ordinances provide no definition; the other City offices provide no definition . . . The definitions of blight and deterioration sufficient to deny a license cannot be made of the unarticulated differing views of the various council members. An applicant has the right to know what is permitted and what is not; why the application fails and what can be done to correct it.

The City Council left virtually no factual record for the circuit court or this Court to examine its decision. With no definitions or indication by the City Council as to the meaning of the language in the ordinance, the task of reviewing its decision becomes even more difficult.

[¶22.]     We agree with the circuit court's analysis of the proceedings and comments such that "[the Council] renders a decision so implausible that it cannot be ascribed to a difference in view or the product of agency expertise." *Johnson v. Lennox Sch. Dist. #41-4,* 2002 S.D. 89, ¶ 10 n.2, 649 N.W.2d 617, 621 n.2.  As we stated earlier, the City Council failed to show how the public comments and other knowledge or evidence before the City Council satisfied the requirements of the ordinance.  Accordingly, its decision is an abuse of discretion based on the record it made.

[¶23.]     The City argues the circuit court improperly considered "facts and conclusions beyond those in the record of the proceeding below."  "We presume until the contrary is shown that the 'court did not rely on improper evidence.'" *In re B.Y. Dev., Inc.,* 2000 S.D. 102, ¶ 9, 615 N.W.2d 604, 609 (citing *State Highway Comm'n v. Foye,* 87 S.D. 206, 205 N.W.2d 100, 103 (1973)).  After reviewing the record, it appears the circuit court relied only on evidence the City Council considered in making its decision and other evidence that was properly judicially noticed.  *See id.*

## CONCLUSION

[¶24.]     "The Supreme Court's function in reviewing matters which rest in the discretion of the [circuit] court is to protect litigants from unreasonable conclusions." *Hendriks,* 522 N.W.2d at 502.  We cannot conclude, based on this record, that the circuit court reached an unreasonable conclusion.  The circuit court did not abuse its discretion.  The record supports the circuit court's holding that the City Council acted arbitrarily and capriciously.  M.G. Oil has carried its burden to overcome the presumption that the City Council acted within its discretion.

#25613

[¶25.]    Affirmed.

[¶26.]    ZINTER, MEIERHENRY and SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶27.]    MILLER, Retired Justice, sitting for KONENKAMP, Justice, disqualified.