[Civ. No. 2017. First Appellate District.—April 16, 1917.]

## CASTRO POINT RAILWAY & TERMINAL COMPANY (a Corporation), Respondent, v. ANGLO–PACIFIC DEVELOPMENT COMPANY (a Corporation), Appellant.

EMINENT DOMAIN—LANDS FOR RAILROAD USES—PUBLIC NECESSITY FOR TAKING—PROOF NOT REQUIRED.—In view of section 465 of the Civil Code, which expressly grants to railroad corporations the right to acquire lands by condemnation proceedings to be used in the construction and maintenance of their roads, and of section 1238 of the Code of Civil Procedure, which expressly provides that railroads are public uses in behalf of which the right of eminent domain may be exercised, the question as to whether there is a present public need for the construction and operation of the particular railroad seeking to exercise that right is no longer a judicial ques-

tion to be litigated in the condemnation proceeding, except to the extent that a private person whose lands are sought to be taken may put in issue the good faith of the railroad corporation in seeking to acquire his land for uses which are not public, but really to subserve some private interest or end.

APPEAL from a judgment of the Superior Court of Contra Costa County. R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

Reed, Black, Nusbaumer & Bingaman, for Appellant.

McCutchen, Olney & Willard, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff in an action for the condemnation of certain lands of the defendant in the city of Richmond for the use of the plaintiff as a railroad corporation. The cause was tried before the court without a jury. The evidence was not voluminous, and there is little, if any, dispute as to the facts of the case. The main and practically the only question involved is as to the sufficiency of the plaintiff's proof to warrant the trial court in denying the defendant's motion for a nonsuit and to justify its judgment of condemnation.

Upon the trial of the cause the plaintiff introduced in evidence a certified copy of its articles of incorporation, showing that it was a regularly organized railroad corporation, having for its object the construction of a railroad for the doing of a general freight and passenger business; and also presented in evidence the resolutions and maps of the corporation showing the proposed route of its railroad and the site and location of its terminals, and also showing the location of the lands of the defendant and others proposed to be taken. From these maps it appeared that the proposed railroad would be about two miles long, having its northern terminal in the hamlet of Winehaven, where it would connect with a railroad already there known as the Belt Line, and running around the easterly and northerly shores of the Richmond Peninsula, and that the plaintiff's proposed line would thence extend southerly along the shore line of the peninsula to deep water. There was then presented the testimony of the chief engineer of the plaintiff, who testified that he had made

surveys of the route and terminals of said railroad, and that the lands of the defendant sought to be condemned formed a part of said route and of one of said terminals, and were necessary for such uses, and that the work of constructing said railroad was in progress. With these proofs the plaintiff rested its case; whereupon the defendant moved for a nonsuit upon the ground that the plaintiff had offered no proof showing any public necessity for the existence of such a railroad, or for the taking of the lands in question. The court denied this motion, whereupon the defendant offered evidence tending to show that there were other lands which it was claimed were equally available for the uses to which the plaintiff proposed to put the land sought to be condemned, and also tending to show that there was no present public necessity for the building of said railroad growing out of an existing freight or passenger traffic needing to be served by it. The defendant also tendered some evidence showing that the incorporators of the railroad in question were also the principal owners of a rock quarry at or near its proposed northern terminal, and which would be chiefly benefited by the construction of the railroad. The court, however, rendered judgment in plaintiff's favor, whereupon the defendant prosecutes this appeal.

The sole question presented to the court upon this appeal is as to whether the plaintiff, in addition to the proofs above set forth, was required to show affirmatively that there existed a public necessity for the railroad for the uses of which the lands of the defendant were sought to be taken. The contention of the appellant is that when this issue is raised by the pleadings the burden is cast upon the plaintiff to make such affirmative showing as to the existence of a present public necessity for the railroad in question. On the other hand the respondent maintains that when the plaintiff has shown, as it did in this case, that it was a railroad corporation duly organized for the purpose of constructing and operating a railroad and conveying freight and passengers for hire, and that the land sought to be condemned was necessary for the uses for which it is sought, it has sufficiently established its right to the exercise of eminent domain in the taking of said lands for such uses under section 465 of the Civil Code and section 1238 of the Code of Civil Procedure.

We feel constrained to give our concurrence to the above contention on the part of the respondent herein from a consideration of the terms of the sections of the codes above cited, and from what appears to us to be the settled view of the courts of this state respecting the proofs required in cases of this character. Section 465 of the Civil Code in its enumeration of the powers of railroad corporations provides: "Every railroad corporation has power . . . 7. To purchase lands . . . to be used in the construction and maintenance of its road and all necessary appendages and adjuncts, or acquire them in the manner provided in title 7, part 3, Code of Civil Procedure, for the condemnation of lands." Section 1238 of the Code of Civil Procedure, under the title of "Eminent Domain," provides as follows: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: . . . 11. Railroads. . . . " Section 1241 of the Code of Civil Procedure, under the same title, contains the following provision: "Before property can be taken, it must appear (1) that the use to which it is to be applied is a use authorized by law; (2) That the taking is necessary for such use; provided, when the legislative body of a county, city and county, or an incorporated city or town, shall, by resolution or ordinance, adopted by a vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such county, city and county, or incorporated city or town, of any proposed public utility, or any public improvement, and that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance shall be conclusive evidence, (a) of the public necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor."

Section 1244 of the Code of Civil Procedure under the same title prescribes what the complaint in a condemnation suit must contain as follows: "The complaint must contain: (1) The name of the corporation, association, commission, or person in charge of the public use for which the property is sought, who must be styled plaintiff. (2) The names of all owners and claimants of the property, if known, or a statement that they are unknown, who must be styled defendants. (3) A statement of the right of the plaintiff. (4) If a right

of way be sought, the complaint must show the location, general route, and termini, and must be accompanied with a map thereof, so far as the same is involved in the action or proceeding. (5) A description of each piece of land, or other property or interest in or to property, sought to be taken, and whether the same includes the whole or only a part of an entire parcel or tract or piece of property, or interest in or to property. . . . ''

A comparison of these several sections of the code setting forth the right and the procedure in cases of eminent domain discloses that their only statement as to the cases wherein any proof or showing of a public necessity for the taking of property under the right of eminent domain designates cases where municipal corporations are seeking through their legislative bodies to acquire property for public uses; and that in such cases the resolution or ordinance of such legislative body shall be conclusive evidence of the public necessity of such proposed utility or improvement. In all other cases where private property is so sought to be taken by those entitled to exercise this right under section 1238 of the Code of Civil Procedure, all that is required to be shown is that the use for which the property is to be taken is a public use, and that the property is necessary for such use. By the express terms of section 1238 it is provided that railroads are public uses in behalf of which the right of eminent domain may be exercised; while section 465 of the Civil Code expressly grants to railroad corporations the right to acquire lands by condemnation to be used in the construction and maintenance of their roads. It would thus appear that there is no express requirement in the sections of our code which relate to the acquisition of lands for the use of railroad corporations through the exercise of eminent domain, and which define the procedure therefor, which would require these *quasi*-public corporations seeking to exercise that right to show affirmatively that there is an existing public necessity for the construction of the particular railroad for the uses of which such lands are sought to be taken.

In the early case of *Contra Costa Coal Mines R. Co.* v. *Moss,* 23 Cal. 323, 324, it was held that when the legislature determines that railroad corporations were so far public in their nature as to be entitled to exercise the right of eminent domain, the necessity for the particular railroad seeking to exer-

cise that right was hereby established, and that the question as to whether there was a public need for such railroad was no longer a judicial question except in cases where the rights of private ownership were being invaded under pretense of an appropriation for a public use.

In the case of *City of Pasadena* v. *Stimson,* 91 Cal. 238, [27 Pac. 604], which was an action for the condemnation of lands for sewer purposes, it was held that when the legislature had defined sewerage to be one of the public uses for which private property may be taken, and when a city or town decides for itself, as it may do, that a sewer is desirable, it is not bound to prove that such sewer is necessary, but only that the taking of the property it seeks to condemn is necessary for the construction of the sewer: ''when it shows that the use to which the property is to be applied is a public use (and this is shown by the statute in this case), the inquiry on that head is closed (Code Civ. Proc., sec. 1241).''

In the case of *San Francisco and San Joaquin Valley Ry. Co.* v. *Leviston,* 134 Cal. 412, [66 Pac. 473], the case of *City of Pasadena* v. *Stimson,* 91 Cal. 238, [27 Pac. 604], was cited as authority for the proposition that as to the necessity for the right of way, the existence of the public use and the location through the defendant's land established the necessity.

While the decisions of the courts of other jurisdictions are not uniform upon the subject, the effect of the foregoing cases would seem to be to settle the law in this state in favor of the view that when the legislature has declared that railroad corporations shall have the right to condemn lands of private persons for their uses, the question as to whether there is a present public need for the construction and operation of the particular railroad seeking to exercise that right is no longer a judicial question to be litigated in the condemnation proceeding, except to the extent that a private person whose lands are sought to be taken may put in issue the good faith of the railroad corporation in seeking to acquire his land for uses which are not public, but really to subserve some private interest or end; and such we understand to be the full extent and effect of the cases of *County of San Mateo* v. *Coburn,* 130 Cal. 631, [63 Pac. 78, 621], and of *Madera Ry. Co.* v. *Raymond Granite Co.,* 3 Cal. App. 668, [87 Pac. 27]. In so far as this latter issue is presented in the case at bar it need only be said that, without reviewing it, the evidence sufficiently

justifies the findings of the lower court to the effect that the plaintiff is acting in good faith in seeking to construct, maintain, and operate its railroad, and that the same will be of benefit and use to the public; and that while it is true that the incorporators of the plaintiff are also directors and stockholders of certain corporations engaged in the operation of quarries which will be benefited by the building of such railroad, it was nevertheless not incorporated for the mere purpose of being of private benefit to those interested in said corporations, but was incorporated for the purpose of building and operating a railroad between certain termini, and that said railroad will be so situated when constructed as to be of benefit and use to the public. These findings of the trial court will not, under the settled rule, be disturbed upon appeal.

Judgment affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1917.