[Civ. No. 4650.  First Appellate District, Division One.—April 16, 1924.]

## RICHMOND WHARF & DOCK COMPANY (a Corporation), Appellant, v. BLAKE BROTHERS COMPANY (a Corporation), Respondent.

[1] EMINENT DOMAIN—FIXTURES—FAILURE TO SEPARATELY VALUE—CONVERSION.—Where a final judgment of condemnation of land, upon which there are fixtures, has been entered, and the court fixed the value of the land without separately valuing the fixtures, a party defendant in such proceeding who appeared and answered cannot maintain a subsequent action for the conversion of such fixtures and the use thereof, where the condemnor refused to deliver the fixtures upon demand.

[2] ID.—VALUE OF INTERESTS IN LAND—BURDEN OF PROOF—WAIVER. In an action of condemnation, the burden is upon the defendant, the condemnee, to show the value of all the interests in the land condemned, and if the condemnee fails to have the fixtures thereon separately valued in the condemnation proceedings the question is waived.

[3] ID.—ASSESSMENT OF DAMAGES — MISTAKE—REMEDY.—In an eminent domain action, if the commissioners or jury, by proceeding upon erroneous principles, or otherwise, make a mistake in the assessment of damages, by omitting an item of damages which ought to have been allowed, the remedy must be sought in the proceedings themselves; and such mistake cannot be made the basis of an independent suit.

[4] CONVERSION—ACTION FOR DAMAGES—OWNERSHIP OF CONVEYOR—EVIDENCE—NONSUIT.—In an action for damages for the alleged conversion of a rock conveyor claimed to be the personal prop-

---

1. Value of fixtures as element of damages sustained by appropriation of property in eminent domain proceedings, note, **Ann. Cas.** 1916C, 780. See, also, 10 **Cal. Jur.** 343; 10 **R. C. L.** 141.

2. See 10 **Cal. Jur.** 376.

erty of plaintiff, a judgment of nonsuit as to the whole of the conveyor is properly entered, where the evidence shows that a part of the conveyor (a trade fixture) was located upon lands which had been the subject of an eminent domain proceeding, in which plaintiff was a party defendant and had appeared and answered and judgment had been entered in favor of .the condemnor, and the remainder of the conveyor was located upon a wharf outside and beyond the tide-land lot owned by plaintiff and the evidence failed to show that plaintiff at any time had title to or possession of that part or portion of the conveyor.

(1) 20 **C. J.**, p. 1182, sec. 543.   (2) 20 **C. J.**, p. 982, sec. 386.
(3) 20 **C. J.**, p. 1182, sec. 543.   (4) 38 **Cyc.**, p. 2044.

APPEAL from a judgment of the Superior Court of Alameda County.   Everett J. Brown, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Nusbaumer & Bingaman for Appellant.

Johnson & Shaw for Respondent.

NEEDHAM, J., *pro tem.*—This is an appeal taken by the plaintiff from a judgment of nonsuit entered in favor of the defendant, and the appeal is before us upon a bill of exceptions.   The material facts are as follows: The action is brought by the plaintiff to recover from the defendant the value of certain alleged personal property claimed to have been converted by the defendant to its own use, and also for compensation for the use of said property by the defendant.   The personal property claimed to have been converted by the defendant is a certain conveyor described in the complaint as *"that certain personal property commonly known and described as a conveyor, together with all belts, rollers, pulleys, appliances and personal property of every kind and description used in connection with said conveyor, which said conveyor and property then and there during all of said times herein mentioned was situated upon that certain wharf and approach to said wharf hereinafter described, and which conveyor at all times herein mentioned ran from the outer end of said wharf across the said wharf and across the approach to said wharf to the upland adjacent to the*

*land end of the approach to said wharf. The said wharf and approach to said wharf above referred to during all the times herein named was situated upon Tide Lot No. 16, Section 16, Tp. 1, N., R. 5 W., M. D. B. & M., which said tide lot is situate in the County of Contra Costa, State of California."*

It is alleged that on August 3, 1906, one A. S. McDonald made a contract with Anson S. Blake, in which contract McDonald granted to Blake the possession of certain land for five years next ensuing, upon consideration that Blake fill the same within said five years, the land being submerged land and lying in the bay of San Francisco next to the shores of the city of Richmond, and also granted in the same contract to the San Pablo Quarry Company, a corporation, and of which Blake was president and practically the sole owner, the right to construct a wharf over said land. Blake was to have a one-half interest in the land if he filled it. The San Pablo Quarry Company constructed a wharf during the latter part of 1906 and the early part of 1907, over the demised land and beyond out to deep water, and installed a quarry and rock crushing plant on the upland belonging to itself at the land end of the wharf, and constructed and installed from the quarry and the rock crushing plant so situated on the upland, over the said wharf out to its outer end a belt conveyor, for the purpose of conveying from the rock crushing plant to lighters, barges and vessels lying at the outer edge of the wharf, the crushed product of said quarry. It was also provided in said contract that the San Pablo Quarry Company might sublet the wharf with the consent of all parties to the contract, but in the event of said subletting, one-half of the rent was to be paid to McDonald, the owner of the land. The San Pablo Quarry Company, after constructing the wharf and opening the quarry and constructing the rock crushing plant and the said conveyor, did sublet in November, 1908, all of said properties to the San Francisco Quarries Company, becoming bound thereby to pay McDonald one-half of the rentals. Blake did not comply with his contract and did not fill the land. These matters are referred to and set forth in the cases of *Richmond Wharf & Dock Company* v. *Blake,* 181 Cal. 454 [185 Pac. 184],

and *Richmond Wharf & Dock Company* v. *Blake et al.,* 39 Cal. App. 5 [185 Pac. 186].

The plaintiff, appellant herein, claims that in these cases it was held that the San Pablo Quarry Company was the tenant of McDonald during the five years from August 3, 1906, to August 2, 1911, and that upon the expiration of said contract the said San Pablo Quarry Company and its subtenant, San Francisco Quarries Company, were unlawfully holding over. The said actions last above referred to were brought to recover for the use and occupation of the wharf for the period beginning with the expiration of said contract, to wit: August 2, 1911, and ending with the condemnation of the wharf by the Castro Point Railway & Terminal Company on July 23, 1913, hereinafter more particularly referred to.

On or about the twenty-third day of July, 1913, the Castro Point Railway & Terminal Company, a corporation, obtained in the superior court of the county of Contra Costa, a judgment of condemnation of a portion of the land included within the contract between McDonald and Blake above referred to, and under which contract, as before stated, the San Pablo Quarry Company built and was in possession of the wharf in question and upon which is situated the conveyor in question, and the said judgment of condemnation included that portion of said land upon which stood a portion of the wharf containing a portion of the conveyor, lying between the lands of the San Pablo Quarry Company and the outer land of McDonald. After the entry of the final judgment of condemnation on August 19, 1913, and the acquisition of the right of possession of the property condemned, the railroad corporation made no alteration in the use of said property. Up to the time of the trial below, the said wharf, land, quarry, conveyor and equipment were being operated in the same manner as they were on August 3, 1911, the date of the expiration of said contract.

The San Pablo Quarry Company, by its subtenant, San Francisco Quarries Company, continued in the possession of the premises and conveyor in question until about April, 1914, at which time the San Pablo Quarry Company sold and transferred to the Blake Brothers Company, a corporation, the defendant in the instant case, the said quarry and rock-crushing plant and everything connected therewith,

and since that time the defendant corporation possessed and operated all of said property, including said conveyor.

Plaintiff in the present case offered in evidence and there was received an assignment from McDonald and others claiming or possibly having some interests or rights in said property which said assignment purported to transfer the title of said conveyor, including all moneys due for its use before the commencement of the present action. The defendant corporation, Blake Brothers Company, and the San Pablo Quarry Company and the San Francisco Quarries Company, after the entry of the condemnation judgment aforesaid continued to use the property in question. Plaintiff, appellant herein, made demand upon defendant, the San Pablo Quarry Company and the San Francisco Quarries Company, for the delivery of the possession of the property in question, which demand was made on or about the twenty-first day of August, 1916, which demand was refused and the defendant continued to use the property and was in possession thereof at the commencement of this action.

The foregoing is a detailed statement of the facts of the case, and although the statement is somewhat long and the facts of the case involved and difficult to keep clearly in mind, it is necessary to state them.

The plaintiff, appellant herein, alleges that the reasonable market value of the conveyor and its equipment at the time the demand was made for its possession was the sum of $7,000, but the proof of its value was the sum of $4,000. In a second cause of action in the same complaint the plaintiff alleges that the reasonable market value of the use made by the defendant of the conveyor and equipment from November 1, 1913, to August 21, 1916, was the sum of $200 per month, but the proof was the sum of $15 per month.

The plaintiff contends that the conveyor which is the subject matter of the suit was a trade fixture placed upon the premises leased by the tenant during the lease, and that since the tenant did not remove the trade fixture at the termination of the lease that the title thereto passed to the landlord. Appellant contends that the cases of *Richmond Wharf & Dock Company* v. *Blake et al.*, 181 Cal. 454 [185 Pac. 184] and 39 Cal. App. 3 [185 Pac. 186], *supra,* hold that the San Pablo Quarry Company was a tenant of A. S.

66 Cal. App.—35

McDonald and his successors in interest from the construction of the wharf referred to in 1906 to August 2, 1911, on which date the lease expired, and that the San Pablo Quarry Company thereafter held over through its subtenant, the San Francisco Quarries Company; that as the lessee did not during the pendency of the lease remove the trade fixtures that the title to said trade fixtures passed to the assignors of plaintiff, appellant herein, on the third day of August, 1911. (*Earle* v. *Kelly*, 21 Cal. App. 480 [132 Pac. 262].)

The attorney for plaintiff, appellant herein, stated at the beginning of the trial of the case, ''Our claim is going to be that this conveyor while it was constructed by Mr. Blake, or his corporation, under a lease from us, that when the lease expired he did not remove it from the land and hence became our conveyor.''

Let us concede for the purposes of this decision that this is true and has been established by competent evidence. That is, let us assume that the property in question, to wit: the conveyor and equipment passed to the assignors of plaintiff, appellant herein, by reason of the fact that the said fixtures were not removed during the term of the lease and thereby became the property of the landlord.

The record shows, however, that in 1912 Castro Point Railway & Terminal Company began an action in condemnation in the superior court of the state of California, in and for the county of Contra Costa, to condemn a portion of the land upon which a greater portion of the fixtures in question were erected and on the nineteenth day of August, 1913, a final order of condemnation was entered. This case was appealed to the supreme court (33 Cal. App. 418 [165 Pac. 544]), the *remittitur* having been handed down on April 16, 1917.

The plaintiff, appellant herein, argues that until the nineteenth day of August, 1913, the date of the entry of the final judgment in condemnation, above referred to, and until the said condemnation judgment became final by the handing down of the *remittitur* on April 16, 1917, that the *title* to these trade fixtures was in plaintiff's assignors and plaintiff, and the *possession* was and continued to be in the San Pablo Quarry Company and its subtenant, the San Francisco Quarries Company.

The plaintiff, appellant herein, made proof that on April 1, 1914, it made demand for the possession of the trade fixtures in question, the trade fixtures at that time being in the possession of defendant, and the defendant having refused to give possession to plaintiff (in whom it is alleged the title then vested) and claims that such action amounted to a conversion of the property in question and, therefore, the plaintiff is entitled to damages for the conversion of the property and for the use thereof.

The claim of the plaintiff, appellant herein, that the fixtures in question became the property of the plaintiff's assignors and plaintiff, for the reason that the said fixtures were not removed from the leased premises during the term of the lease, is, in legal effect, an admission that this property became a part of the realty. Nevertheless, the plaintiff, appellant herein, in the court below prays for damages for the conversion of these fixtures upon the theory that such fixtures are personal property.

The court below, taking the position that the action could not be maintained upon this theory upon the evidence introduced, the plaintiff then introduced in evidence all the proceedings in the condemnation suit above referred to, and in its closing brief the appellant makes this statement: "In the case before the court, the sole question is whether or not *in a condemnation action the condemnor and condemnee can verbally agree; that fixtures upon the land are not to be included in the condemnation action.*"

[1]  This is not an accurate statement of the sole question involved. The real question for decision, according to the record before us, may be stated thus: *A final judgment of condemnation of land having been entered, upon which there are fixtures and in which condemnation proceedings the court fixed the value of the land without separately valuing the fixtures, and a party defendant in such a condemnation action appeared and answered, can such party defendant in a future action maintain an action for the conversion of such fixtures and the use thereof, where the condemnor refused to deliver the fixtures upon demand?* We are satisfied that such an action cannot be maintained; it would be equivalent to a collateral attack upon a final judgment of a court of competent jurisdiction, and upon fundamental principles is not permissible. (Code Civ. Proc., sec. 1908;

20 C. J., p. 1182; *Harrelson* v. *Oro Grande, etc.,* 23 Cal. App. 479 [138 Pac. 932].)

In the case of *Castro Point Railway & Terminal Company* v. *Anglo Pacific Development Company et al. it must not be forgotten* that the Richmond Wharf & Dock Company, the plaintiff in the instant case, appeared as a party defendant and filed a supplemental answer, and in said answer set up that the land sought to be condemned was of the reasonable value of $150,000, and that the damages which will accrue by reason of its severance from the portion sought to be condemned would amount to the sum of $50,000. At that trial the Richmond Wharf & Dock Company, appellant herein, was represented by counsel and no effort was made by it to have the fixtures in question separately valued.

In the instant case the plaintiff put in evidence the transcript on appeal in the case of the *Castro Point Railway & Terminal Company* v. *The Anglo Pacific Development Company et al.;* no point was made in that case or on appeal that the court did not separately value the fixtures or improvements. (See *Castro Point Railway & Terminal Co.* v. *Anglo Pacific Development Co.,* 33 Cal. App. 418 [165 Pac. 544].)

[2] It is well settled that in an action of condemnation the burden is upon the defendant, the condemnee, to show the value of the property condemned. (10 Cal. Jur., p. 357, note 10, and cases cited; Kerr's Cyc., Code Civ. Proc. 1920, sec. 1248, note 20, and cases cited; *Harrelson* v. *Oro Grande Lime etc. Co.,* 23 Cal. App. 479 [138 Pac. 932].)

Conceding that in a condemnation proceeding the condemnor and the condemnee may agree or stipulate that improvements or fixtures situated upon the land sought to be condemned need not be included in the condemnation judgment, and that the condemnee may remove and retain such fixtures and improvements, yet the evidence introduced, or offered, failed to show any such agreement. At most, the evidence offered by the appellant, taken in its broadest sense, even if it had been admitted, would have amounted to no more than a showing that the court did not separately value such fixtures, evidently because it was not requested to do so. Such evidence, if received and admitted in the court below, giving to counsel for appellant the most liberal construction in his favor that the language of counsel in

his offer of proof is capable, amounts to no more than a showing that in the condemnation proceeding the record is *silent* upon the question of valuation of the fixtures in question.

We have seen, as hereinbefore stated, that the burden is upon the condemnee to show the value of all the interests in the land condemned, and it follows that if the condemnee fails to have the fixtures separately valued in the condemnation proceedings, the question is held to have been waived. (10 Cal. Jur., p. 376; *German Savings & Loan Society* v. *Ramish,* 138 Cal. 127 [69 Pac. 89, 70 Pac. 1067]; *Reed Orchard Co.* v. *Superior Court,* 19 Cal. App. 622 [128 Pac. 918].)

[3]   The true rule, we think, is well stated in Lewis on Eminent Domain, vol. 2, sec. 831, as follows: ''If the commissioners or jury make a mistake in the assessment of damages, by omitting an item of damages which ought to have been allowed, by proceeding upon erroneous principles, *or otherwise,* the *remedy* must be sought in the *proceedings themselves.* Such mistake cannot be made the basis of an *independent suit.*'' (Italics ours.)

[4]   There is one other point to be considered and that is that the proof shows that a part of the conveyor is situated upon land not included in the condemnation suit and that as to such part of the conveyor so situated it was error to grant the nonsuit.

The appellant alleges that the conveyor is situated upon a wharf located upon Tide Land Lot No. 16. The evidence shows that appellant acquired said Lot No. 16 through sundry mesne conveyances, and there is no evidence that appellant at any time was the owner of the land outside and beyond said Tide Land Lot No. 16, upon which the said portion of said conveyor is situated. The evidence fails to show that appellant at any time had title to or possession of that part or portion of the conveyor outside and beyond said Tide Land Lot No. 16.

It follows for the reasons given that the court did not err in granting a nonsuit, and, therefore, it is ordered that the judgment be and the same is hereby affirmed.

St. Sure, J., and Tyler, P. J., concurred.