338 P.2d 787

Gerhard A. GILBERT et ux. and Gilbert of Arizona, Inc., a corporation, Appellants,

v.

STATE of Arizona ex rel. Robert MORRISON, Attorney General, Appellee.

No. 6490.

Supreme Court of Arizona.

April 29, 1959.

Lawrence E. Holladay, Tucson, for appellants.

Robert Morrison, Atty. Gen., Ronald M. Bond and Charles L. Hardy, Asst. Attys. Gen., for appellee.

UDALL, Justice.

This is an appeal by defendants-appellants, Gerhard Gilbert, et ux., and Gilbert of Arizona, Inc., a corporation, from a judgment of condemnation entered in favor of the State of Arizona, plaintiff-appellee, wherein the defendants were denied *any* *damages* for improvements as a result of the taking for highway purposes of a part of certain realty of which they were the lessees. The parties will hereafter be referred to either by name or as they appeared in the lower court, i. e., plaintiff and defendants.

On March 10, 1952, John H. Hunts and Millie M. Hunts, his wife, gave a written option agreement to defendant Gerhard Gilbert for a triangular tract of unimproved land, located near the old railroad overpass on the Tucson-Casa Grande Highway. The option was thereafter exercised by Gilbert and the option agreement thereby became the lease between the parties. The lease was for a period of five years, with the right of renewal for a similar term, at an agreed rental of $50 per month. The agreement recites that:

"Purpose for which lessee will use property is * * * for a lumberyard and building materials business, all connected business and for residence for operator."

During the period between November 1, 1952 (date option exercised) and April 10, 1953, defendant Gilbert improved the condemned premises by grading, installing sewer lines, water lines and electricity, and by erecting five buildings thereon for use in his lumber and trading business.

On April 10, 1953, defendant Gerhard Gilbert sold and conveyed the improvements on the condemned premises, together with the stock of lumber and building materials thereon, to his codefendant, Gilbert of Arizona, Inc., and at the same time sublet the demised premises to said corporation of which he was the president and principal stockholder.

On October 8, 1955, the State of Arizona, at the relation of the attorney general, filed a complaint in condemnation to obtain a right-of-way for highway purposes over 1.23 acres of the triangular tract embraced within the area covered by the Gilbert lease. The State named as defendants both Mr.

Gilbert and his corporation, as well as Millie M. Potter (formerly Millie M. Hunts). It seems that John M. Hunts had died in the interim, and his widow—who had remarried—was the sole owner of the fee to the premises in question. Apparently the State experienced no difficulty in reaching agreement with Mrs. Potter as to the value of her interest as by stipulation a judgment was entered in her favor for $10,000 with interest. Mrs. Potter claimed no interest in, nor was she paid for, the improvements placed by defendants on the condemned premises.

It was stipulated the State had the right to take the real property in question, and that the taking actually occurred on October 8, 1955—this being the date summons was issued. Under the statute, A.R.S. Subsection A of Section 12–1123, values are to be computed and fixed as of the date of summons. The only contested issue, therefore, was what amount, if any, should be allowed to the Gilberts for their interest as lessees. The case was tried to the court sitting without a jury. The court found the lease of defendants terminated on October 10, 1955, and hence it held that no interest was taken from them by the State of Arizona in this condemnation proceeding. Judgment was that defendants take nothing by their claims. This appeal followed.

In this action to condemn "real property" for highway purposes it becomes necessary to determine at the outset the nature of the interest held by defendants in the improvements on the real property sought to be condemned. Are the improvements placed thereon by said defendants, as between them and the State of Arizona, to be considered as "personalty" or as accessions to the realty within the meaning of the law?

■ The evidence is undisputed that defendants erected five frame buildings on the property in question, and such action was contemplated by the parties when the lease was entered into. Two of these structures—the office and residence—were substantial buildings resting on concrete slab foundations. The other three smaller buildings were affixed to the realty and rested on concrete or wooden blocks. Undoubtedly all of these permanent structures were affixed to the land and hence as an abstract matter of law were not "personalty" but were in the nature of "real estate". The State maintains, however, that this status was changed by reason of the written agreement between the lessor and lessee.

■ It is apparent from the record that the trial court denied defendants any relief because it adopted the view of the State that the following provisions of the option agreement (the lease between Hunts and Gilbert), viz.:

"Any portion of the above described premises that may be condemned for

highway use shall be removed from lease if and when so condemned.

"Lessee shall remove all constructions and improvements by him from the described premises at the expiration of lease, except the well if any. Lessee has permission from lessors to remove same.",

deprived the defendants of the improvements on the condemned parcel and left them no alternative but to remove the improvements, regardless of the loss or damage incurred thereby, and recoup their losses from the salvage and not from the State of Arizona.

The defendants on the other hand contend, and we think correctly so, that the above-quoted provisions of the lease relative to condemnation and removal of the improvements, are not available to the State of Arizona but were exclusively for the benefit of the lessors and the lessees and their assigns.

Can it be said that just because the tenant would have no cause of action against the landlord in the event of condemnation that the condemner (the State) may inure to such a benefit also? We think not. This private agreement between landlord and tenant for removal of structures does not change the character of realty to personalty merely because it is advantageous to the State of Arizona. This principle has been amply expressed in

In re Acquiring Certain Property on North River, City of New York, 118 App.Div. 865, 103 N.Y.S. 908, 910, affirmed without opinion 1907, 189 N.Y. 508, 81 N.E. 1162:

"* * * The city is not the landlord, and, as against the tenant, has not acquired the landlord's rights, but is taking this property against the wish of both the landlord and the tenant for its own purposes. The rule that exists as between landlord and tenant, which has been evolved by the courts to prevent injustice to the tenant, should not be applied so that a beneficial use of the property is taken from the tenant without making him a fair compensation for the property as a whole."

The leading case on this matter is United States v. Seagren, 60 App.D.C. 183, 50 F.2d 333, 75 A.L.R. 1491, with the Annotation on page 1495 et seq. See, also, Annotation, 3 A.L.R.2d at pages 307–310, Section 10—Liability of condemner as affected by right of removal.

There is no question that had these buildings been constructed by the landlord, the State would be obliged to pay for their taking. We hold that merely because of a private contract between lessor and lessee such agreement does not act as a "release" to the state allowing them to escape their just obligation. The controlling rule in this situation is well stated in Nichols on Eminent Domain, 3d Ed., Vol. 2, Section 581(2):

"It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. *This rule is, however, entirely for the protection of the tenant and cannot be invoked by the condemning party.* If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant. A tenant is not, however, entitled to recover for buildings or other property not attached to the realty." (Emphasis supplied.)

■ Justice requires that the State should compensate defendants by way of damages for the fair value of the buildings they had previously placed on the condemned lands. The inherent character of the structures was realty, regardless of the agreement between the landlord and tenant as to the right of removal. We hold, therefore, that the trial court erred in failing to allow damages to defendants for such taking. This necessitates a reversal of the judgment.

■ Defendants contend the only competent evidence as to the value of their improvements was that of their witness Arthur J. Johnson, realtor and appraiser, who viewed the premises and made his appraisal on the date of condemnation, which is in accordance with the provisions of A.R.S. Section 12–1123. They ask that his appraisal figure of $13,526.50 be accepted and that we direct the lower court to enter judgment for this amount. It is our considered opinion that on the record presented this action cannot properly be taken because there was some evidence of a lesser value. The State called three experienced appraisers as witnesses, viz.: Messrs. Mattingly, Klafter and Batka, of Tucson, all of whom placed a much lower valuation on said buildings. None of these witnesses viewed the premises or buildings in question until more than five months after the condemnation had taken place. They all admitted they had made no personal inspection of the interior and exterior of the buildings and improvements in question at the time the property was condemned. Their principal reliance was upon photographs taken in October 1955. It was also shown that before their ap-

praisals were made, certain of the smaller buildings had been removed, and that in the interim there had been a substantial misuse or deterioration of those buildings still remaining. The weight to be given this evidence is a matter for the trial court to determine.

The judgment as to the Gilberts is reversed with directions to grant a new trial solely on the issue as to the fair value, on October 8, 1955, of defendants' property expropriated by the State.

Judgment reversed with directions.

PHELPS, C. J., and STRUCKMEYER, JOHNSON, and BERNSTEIN, JJ., concurring.