[Civ. No. 23669. Second Dist., Div. Three. Jan. 8, 1960.]

EL MONTE SCHOOL DISTRICT, Plaintiff and Respondent, v. BIRJA M. WILKINS et al., Defendants and Respondents; EDDIE NUNEZ et al., Appellants.

48

Alexander Ruiz and Manuel Ruiz, Jr., for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), and Edwin P. Martin, Deputy County Counsel, for Plaintiff and Respondent.

Wanamaker, Lane & Tookey, Vaughan, Brandlin & Baggot, Thomas G. Baggot and Arthur V. Kaufman for Defendants and Respondents.

FORD, J.—The appellants, 39 in number, were the respective lessees of various parcels of real property in a community known as "Hicks' Camp."[1] They appeal from the judgment and from the final order of condemnation in an action in eminent domain. The appeal is also from the denial of the appellants' motion for a new trial,[2] the denial of their motion to vacate the judgment and the final order of condemnation, the order made after judgment for possession by the condemner, the order striking the cross-complaint of Felipe Munoz, and certain other rulings made prior to judgment. The latter rulings which will be specifically discussed hereafter are embraced within the appeal from the judgment.

By its complaint, filed December 15, 1954, respondent El Monte School District sought to acquire a parcel of real property for school purposes. Appellants answered the com-

---

[1]The problems of Hicks' Camp have been before this court in another matter: *People* v. *Oken*, 159 Cal.App.2d 456 [324 P.2d 58].

[2]Such order is not appealable. (*Singleton* v. *Perry*, 45 Cal.2d 489, 500 [289 P.2d 794].)

plaint and alleged that their respective interests arose out of 10-year lease agreements with the owners which would expire in April, 1964. They further alleged that "the improvements and appurtenances attached to the plot of real estate described in the complaint and susceptible of evaluation are owned by each defendant pursuant to said lease agreement." The value of the interest of each appellant was alleged. In addition, certain matters were stated by way of "a separate first defense and counterclaim." It will be sufficient, for the purposes of this appeal, to set forth the substance of such matters alleged on behalf of one of the lessees, Felipe Munoz. He alleged that by the taking of his leasehold interest, his right of quiet and peaceful possession had been destroyed to his damage in the sum of $1,120, that "the fair and reasonable monthly market rental value of said premises" for the unexpired term of nine years and four months was $35 per month whereas the rental under his lease was $16 per month, so that he was "entitled to damages in the sum of $2,028.00," that the public authorities of the county of Los Angeles did in 1954 represent to him that if he improved the substandard conditions of his home he could remain undisturbed for the 10-year period of the lease, and that in reliance thereon he made such improvements, the reasonable value of which, with respect to time, labor and materials, was $2,492. It was further alleged that such interest of the lessee was "not susceptible of computation as a divided interest in said real estate" and that "the elements of damage to defendant as hereinabove mentioned, are susceptible of independent evaluation."

. In addition, Felipe Munoz filed a cross-complaint which purported to be on behalf of others similarly situated as well as on his own behalf. Named as cross-defendants in the first amended cross-complaint were the County of Los Angeles, Ernest Roll, District Attorney of Los Angeles County, and Eugene Biscailuz, Sheriff of said county. The substance of the first cause of action of that cross-complaint may be stated as follows: that the cross-defendants had commenced proceedings to abate a nuisance with respect to substandard housing on the property, which was the subject of the eminent domain proceeding, that the public authorities of the county of Los Angeles did, prior to the institution of such proceedings, represent to the cross-complainant that he would have to vacate the premises because they were substandard, unless they were improved, and that certain officials acted "for the specific purpose of causing the cross-complainant to effectuate

a lease agreement with the owners of the real estate, whereby and whereunder, to secure the advantages of unmolested possession and enjoyment, he executed said written lease agreement, and undertook to bring his premises up to standard," that upon the filing of the eminent domain action, the cross-complainant and the other persons similarly situated were faced with the problem of continuing to improve their property so as to avoid the nuisance-abatement difficulty but which improvements, if made after the date of the commencement of the eminent domain proceedings, could not be the subject of compensation therein, that such person should not be compelled to do a useless act and that the cross-defendants should be restrained and enjoined "from declaring a forfeiture of any right, title or interest that cross-complainant and other persons similarly situated may have in and to said premises or the subject matter of his [sic] action, or in the alternative that any said criminal action be restrained pending final determination of the condemnation action herein." In the second cause of action, it was alleged that in reliance upon the representations of officials of the county of Los Angeles, the cross-complainant and the other residents of the community executed 10-year leases and undertook to improve their respective properties, that as a proximate result of the eminent domain action in which the cross-complaint was filed "cross-complainants have been damaged, not only by virtue of the taking of their leasehold interest and improvements thereon, but in addition thereto, have been damaged by virtue of the money, labor and time expended upon, and which have become part of the leasehold interest sought to be condemned by Cross-defendant herein, which is not reflected in the fair market value of the premises sought to be condemned by virtue of the various stages of incompletion of the work accomplished, taking into consideration the circumstances under which work was performed and the inducements incidental thereto," and that cross-complainant and those similarly situated had each suffered damage thereby in the sum of $2,000.

Since appellants claim error with respect to the disposition by the trial court of the cross-complaint, it may be well to determine that matter before turning to other problems presented. While certain persons claiming an interest in the real property made a motion to strike the cross-complaint prior to trial, which motion was granted, the county counsel saw fit to file an answer thereto on behalf of the County of

Los Angeles, Ernest Roll, then District Attorney of said county, and Eugene Biscailuz, then Sheriff of said county. However, during the course of the trial, the county counsel made a motion on behalf of said cross-defendants to strike the cross-complaint. The motion was granted. Such ruling was clearly correct. The relief sought in the cross-complaint did not relate to or depend upon any transaction or matter upon which the eminent domain action was brought within the meaning of section 442 of the Code of Civil Procedure. (*People* v. *Buellton Development Co.*, 58 Cal.App.2d 178, 183 [136 P.2d 793].) Nor, insofar as the parties in whose favor such ruling was made are concerned, can the cross-complaint be said to be one "affecting the property to which the action relates" since it was not one seeking to establish an interest in the property as against other defendants in the condemnation action as in *People* v. *Buellton Development Co., supra,* but rather one in which damages and injunctive relief were sought as against the cross-defendants based on matters independent of and not within the scope of the issues in the eminent domain proceeding by the El Monte School District.

One other matter may be noted at this point. In their notice of appeal, appellants have included an appeal from "Denial of the notice and motion to consolidate for trial and to reinstate stricken pleadings to give court jurisdiction of defendant tenants on November 1st, 1956." Insofar as appellants claim error in the refusal of the trial court to consolidate for trial the present action and *People* v. *Oken* (see 159 Cal.App.2d 456 [324 P.2d 58]), there is clearly no merit in their position. (*Fisher* v. *Nash Bldg. Co.*, 113 Cal. App.2d 397, 402 [248 P.2d 466].) With respect to the matter of the cross-complaints in each action, what has heretofore been said herein and in the opinion in *People* v. *Oken*, 159 Cal.App.2d 456 [324 P.2d 58], sufficiently disposes of appellants' contentions.

The more substantial question is whether the appellants respectively received the proper compensation under the law for the property taken from them under the power of eminent domain. A summary of certain findings of fact is helpful to the proper presentation of this problem. After the jury returned its verdict that the market value of the whole property was the sum of $95,149.90,[3] the court made its findings

---

[3]The jury also determined that there was severance damage in the sum of $17,750, but that matter is not pertinent to any issues raised on this appeal.

of fact as to matters pertinent on this appeal as follows: 1. That the appellants were tenants respectively occupying separate and severable parts of the property and that there was located on each of such parts improvements consisting of a house and appurtenances ·thereto owned by the tenant thereof. 2. That each tenant entered into a lease with the owner,[4] or his predecessor in interest, of the parcel of real property which was the subject of the condemnation action. 3. That each lease was for a term of 10 years, commencing on April 1, 1954, at a certain monthly rental. 4. That each lease contained the following clause as paragraph 4: "In the event that the real estate upon which the premises are located shall be condemned by Legal Authority, or in the event that the maintenance of said house upon said demised premises shall be prevented by any judgment of any Court, or in the event that Lessee shall be convicted of the maintenance of a house upon the said demised premises for violation of any law, then the Lessor shall have the right, upon thirty days notice, to terminate this Lease and remove the Lessee and house therefrom, the latter to be moved at Lessee's expense." 5. That the agreement dated March 6, 1954, between the owners of the property and the representatives of the Hicksville Home Improvement Community Group (which agreement was incorporated in each individual lease by reference) provided as follows: "At the termination period of the Lease or its sooner cancellation the Lessee Home-Owner shall continue to remain the sole exclusive owner of the improvement placed upon the premises by him, even though attached to the soil, and the Lessor shall continue to remain the sole and exclusive owner of the plot of land, upon which the home constructions and appurtenances have been placed." 6. That in September, 1956, the lessor served upon each of the tenants a notice which stated that the "premises having been condemned by legal authority, to-wit: The El Monte School District," in accordance with paragraph 4 of the lease, "said lease and all rights of the Lessee(s) thereunder are terminated as of thirty (30) days from the date of receipt by you of this notice." 7. That it was not true that as of the date of trial of the action (October 30, 1956) the premises of said tenants had been condemned by legal authority as stated in said notice; that the

---

[4]There was a dispute as to the ownership of the fee which is not involved on this appeal. For the purposes of this opinion, "owners," "owner," and "lessor" are used interchangeably, as the record warrants.

lessor had not waived his right to terminate the leases and declare a forfeiture thereof but that the leases did not provide for an automatic termination in the event of condemnation. 8. That as of the date of valuation (October 30, 1956)[5] the leases had no value. 9. That the market values of the tenants' interests as to the improvements owned by them, respectively, were as follows: Eddie Nunez, 4334 Vera Cruz, $800, "being the move-off value of the improvements at said address"; Antonia Ochoa, 10616 Bisby, $500, "being the move-off value of the improvements located at said address"; Tony Mesa, 4274 Saltillo, $250, "being the move-off value of the improvements located at said address"; all other tenants, "nil." 10. That as to all tenants "the value of their leasehold interest is zero dollars."

One of the conclusions of law was that the effect of each notice served in September, 1956, "was not to terminate the lease, but to make the lease terminable from month to month after judgment is entered; that the market value of each of the above named tenant defendants' separate leasehold interest in Parcel 1 as amended is $0.00." Judgment was entered in accordance with the findings of fact and conclusions of law.

■ We now turn to the contention of appellants that they did not receive just compensation for their respective property interests. Even though as between appellants and their lessor the housing structures on the land were personalty insofar as the right of removal was concerned, as between the condemning party and appellants such structures were part of the realty and appellants were entitled to compensation upon the taking thereof under the power of eminent domain. (*People* v. *Klopstock*, 24 Cal.2d 897, 903 [151 P.2d 641]; *City of Los Angeles* v. *Hughes*, 202 Cal. 731, 737 [262 P. 737].) Section 1246.1 of the Code of Civil Procedure provides in part: "Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly."

■ In determining the amount of the award, the general rule is that the market value is to be determined by consider-

---

[5] As stated in the brief of respondent owners: "The trial date, October 30, 1956, was the stipulated date of valuation, being more than one year after the date of issuance of summons, which was on December 15, 1954, and the delay not having been caused by the defendants."

ing the property as a whole and as if owned by one person, regardless of the separate interests therein. (*City of Los Angeles* v. *Klinker*, 219 Cal. 198, 211 [25 P.2d 826, 90 A.L.R. 148]; *People* v. *S. & E. Homebuilders, Inc.*, 142 Cal.App.2d 105, 107 [298 P.2d 53].)

In the present case, the issue of the market value of the property as between the plaintiff and all defendants was tried before a jury. In that part of the trial, counsel for appellants were present but offered no evidence on the issue of value. No witnesses were called by appellants in the first phase of the case although the court invited them to do so. After the jury had returned its verdict and was excused, counsel for appellants sought to introduce evidence as to special damage suffered by them for the purpose of increasing the amount of damages payable by the condemning party. In their argument on appeal, the appellants place reliance on the case of *Sacramento & San Joaquin Drainage Dist.* v. *Truslow*, 125 Cal.App. 2d 478 [270 P.2d 928, 271 P.2d 930], with respect to the matter of special damages. In their reply brief, they state: "The weakness of the argument proposed by said respondent School District becomes evident when it is considered that all opinions of value presented to the jury were unanimous in the conclusion that the highest and best use of said land was vacant industrial property, and that, based upon said hypothesis, the improvements owned by appellant tenants had a negative value, a salvage and/or move-off value only." But assuming that the basis of evaluation of the property as a whole in the first phase of the case was such as to negative any value whatsoever with respect to appellants' housing structures, we need not decide whether their constitutional right to just compensation could only be satisfied under such circumstances by awarding them what might be termed special damages as against the condemning party (see *People* v. *Klopstock, supra,* 24 Cal.2d 897, at p. 903; *Napa Union High School Dist.* v. *Lewis,* 158 Cal.App.2d 69, 73 [322 P.2d 39]) because appellants failed to present that issue at the time when the matter of evaluation of all interests as against the condemner was before the jury. Under the procedure in eminent domain, a defendant must set forth in his answer his estate or interest in the property described in the complaint and the amount he claims by way of damage. (Code Civ. Proc., § 1246; *Bayle-Lacoste & Co.* v. *Superior Court,* 46 Cal.App.2d 636, 645 [116 P.2d 458].) He has the burden of proving the value of his property and if he is present at the trial of the issue of

the amount to be paid by the condemner and fails to produce evidence to support his claim at the proper time, he is in no position to complain. (*Reed Orchard Co.* v. *Superior Court*, 19 Cal.App. 648, 661 [128 P. 9, 18] ; *Richmond Wharf & Dock Co.* v. *Blake Bros. Co.*, 66 Cal.App. 541, 549 [227 P. 223] ; *People* v. *Thomas*, 108 Cal.App.2d 832, 840 [239 P.2d 914].)

■ Appellants were not entitled to raise any question of damages peculiar to them as against the condemning party after the jury had returned its verdict and had been discharged. Moreover, there is no merit in appellants' claim that at that point their motion for a mistrial should have been granted because their counsel was misled during the course of prior conferences in chambers as to the time for the presentation of evidence as to damages peculiar to the tenants. The record is devoid of any basis for such motion.

The final matter to be considered is whether the trial court properly apportioned the award as determined by the jury insofar as appellants are concerned. By stipulation, that phase of the case was heard by the judge after the jury had been discharged.

The evidence adduced on the apportionment phase of the case which was addressed directly to the issue of the value of appellants' interests may be summarized. L. D. Thomason, as to whose qualifications the parties stipulated, was called as a witness on behalf of appellants. His opinion was that there was no bonus value in any lease but that the only interest of any tenant which had value consisted of the improvements on such tenant's property. He then expressed his opinion of value with respect to the interest of each tenant. The opinions as to value were in amounts ranging from $175 for the interests of appellant Pete Amparan and of appellant Rivas, respectively, to $1,750 for the interest of appellant Ochoa. On cross-examination, he stated that such opinions were based on the assumption that each tenant could keep the improvements on the property until the expiration of his lease in 1964, but that his opinions of value would be less in amount if such tenant were on a month to month basis. In that event, they would have only a "move-off" value. On the first phase of the case he had expressed an opinion that the total value with respect to all the housing improvements in the parcel being taken was $1,300. Such amount was actually confined to a move-off value for two structures since the witness' opinion was that the other structures had no move-off value. The figure

of $1,300 was allocated as follows: the dwelling of appellant Ochoa, $500, and the dwelling of appellant Eddie Nunez, $800.

David T. Schumacher, an appraisal engineer, testified on behalf of appellants. He expressed his opinion as to the fair market value as of October 30, 1956, of some of the leasehold interests, the values so stated as to 30 parcels ranging from $1,200 to $2,549. On cross-examination, he testified that, if the tenants were all on a month to month basis, his opinions previously expressed would be different because "if the people could not occupy the ground, well, they would have to remove their buildings." He stated that in that event he doubted if there would be a salvage value except that there might be as to one or two of the houses and that, aside from the salvage value, he would not state that there was damage suffered by any tenant as a result of the taking. The witness also described substandard conditions existing with respect to many of the dwellings.

Respondent owners called as a witness Harry Oken, a real estate broker who was the manager of Hicks' Camp. He testified that in his opinion the highest and best use of the Hicks' Camp property as of October 30, 1956, was as an industrial site and that with respect to such use the improvements had no value because most of the houses, with the exception of two or three, were substandard. He further testified that the condition of the houses was such that they could not be moved off but would have to be demolished. The witness then expressed an opinion as to the fair market value of each of the various leasehold interests together with the improvements on the leased property as of October 30, 1956, based upon the assumption of a valid and existing lease containing the same conditions as were in the lease of each tenant. In his opinion there was no bonus value in any lease. He stated that the improvements would only have a "shelter" value which was nothing as to one property but otherwise ranged from $75 to $750 with respect to the property of various tenants. The witness further testified that if the tenants had no valid subsisting leases but were on a month to month basis, then the houses would have no value at all except that there would be salvage value in the Mesa, Ochoa and Eddie Nunez properties. He expressed the opinion that the move-off value of the Mesa house was $250, of the Ochoa house $400, and of the Eddie Nunez house $350.

Assuming that the leases were in effect as of the time of evaluation, each lessee was entitled to recover the value of

his leasehold interest with the improvements thereon. (*People* v. *Ganahl Lumber Co.*, 10 Cal.2d 501, 511 [75 P.2d 1067].) But the lack of clarity of the provision in each lease as to the time when notice of termination could be given in the event of condemnation proceedings makes it difficult to determine the exact status of such lease as of the date of evaluation of the respective interests of appellants. The provision was that in the event the real estate should be "condemned," the lessor should have the right, "upon thirty days notice, to terminate this Lease and remove the Lessee and house therefrom, the latter to be moved at Lessee's expense." Such lack of clarity is illustrated by the fact that neither the landlord nor the tenant would have a right to remove buildings which were included within the property evaluated at the trial unless the consent of the condemning party was first obtained. (*Cf. People* v. *Church,* 57 Cal.App.2d Supp. 1032 [136 P.2d 139].) But, in any event, appellants do not appear to have been prejudiced by the conclusion of law reached by the trial court that "the effect of the notice was not to terminate the lease, but to make the lease terminable from month to month after judgment is entered." If the notices served on the tenants in September, 1956, did not have the effect of terminating the respective leases prior to the commencement of the trial, the fact that each of such leases could be terminated on short notice would be a factor that would have to be taken into consideration in determining the value of each tenant's interest. (*Iron City Automobile Co.* v. *City of Pittsburgh,* 253 Pa. 478 [98 A. 679, 685, L.R.A. 1917C 420]; *State* v. *Northern Pac. Ry. Co.,* 88 Mont. 529 [295 P. 257, 261].) Consequently, where the unexpired balance of the term, whatever its nature, has no value and the value of the improvements is vitally affected by a contractual provision for their removal within a short period of time, in an eminent domain proceeding the fair market value of the tenant's interest is the removal value of the improvements. (See *Southern California Fisherman's Ass'n* v. *United States,* 174 F.2d 739; *cf. Messer* v. *United States,* 157 F.2d 793.) Since the determination of the trial court as to the value of each tenant's interest finds support in the evidence and is in harmony with the applicable law, the judgment must stand.

What has been said herein disposes of the contentions of appellants with respect to the denial of their motion to vacate the judgment and the final order of condemnation and with

respect to the order made after judgment for possession by the condemner.

The order denying the motion for new trial is not appealable and the purported appeal from such order of denial is dismissed. The order denying the motion to vacate both the judgment and the final order of condemnation is affirmed. The order for possession by the respondent El Monte School District is affirmed. The judgment and the final order of condemnation are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied February 2, 1960, and appellants' petition for a hearing by the Supreme Court was denied March 1, 1960. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.