STATE HIGHWAY COMMISSION, Plaintiff
v.
FOYE, et al., Defendants

(205 N.W.2d 100)

(File No. 11081. Opinion filed March 9, 1973)

Joseph M. Butler, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

Horace R. Jackson, Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for defendant and respondent.

BIEGELMEIER, Chief Justice.

In this condemnation proceeding the parties stipulated the amount of just compensation due defendants for the taking was

$76,000 and the only issue was the apportionment between Foyes, owners of the property, and tenant Mobil Oil Company. From the trial judge's allocation of $18,800 to Mobil, Foyes appeal. Service station buildings with usual facilities and equipment had been constructed and were in use on the property. The lease was for a 10-year period with three 5-year renewal options. Mobil had exercised the first renewal option and about 10 months remained of that period. The lease provided Mobil was to pay $500 a month during renewal periods.

The court made extensive findings as to the location of the property, traffic flow, gallonage sold, etc. Expert appraiser Wendell Hanson of Sioux Falls testified for Mobil as to the value of the leasehold. The court found:

> "that Wendell Hanson of Sioux Falls, who testified for Mobil, is a qualified expert in the appraisal of the type of interest and property involved herein; that he has very substantial experience as a real estate investor and broker, as an agent for several major oil companies in the acquisition of sites for service stations both by lease and purchase; that he has practiced in the appraisal field for many years; that he has qualified as an expert witness in this field in both the courts of the state and in the federal courts; that he made a substantial investigation of rentals, sites, the competitive geography of other service stations in the area, the willingness of oil companies to invest in such facilities in the area, the growth of that part of Rapid City since the middle 1950's, of the traffic pattern and counts, the gallonage production figures of the property involved and other like factors; Hanson testified that in his opinion the economic value of the lease in today's market is $9,200.00 a year."

Deducting the $6,000 annual rent reserved to Foyes from the $9,200 annual economic benefit left $3,200[1] as the annual

---

1. The measure of damages in cases of this character is well settled to be the value of the unexpired term of the lease less the rent reserved. Bales v. Wichita Midland Valley R. Co., 92 Kan. 771, 141 P. 1009 at 1011; Interstate Finance Corporation v. Iowa City, 260 Iowa 270, 149 N.W.2d 308, and Annotation 3 A.L.R.2d 286, 291.

economic benefit and Mobil's interest in the property and its value of the leasehold was $18,800. The court also found Mobil would have exercised its two options of renewal; that the buildings, which it had a right to remove at the end of the term, were attached to and became a part of the real estate, enhancing the value of the property in the sum of $3,301.

■ We approach the solution of the problem presented, having in mind the observation of the court in State Board of Higher Education v. Stewart, 236 Or. 386, 388 P.2d 113:

"It has been observed that the appraisal of leases is a complex process presenting even greater difficulties of evaluation than those found in appraising full owner-ship."

Difficulty in proof of damages, however, does not relieve a court from fashioning a method or basis for determining rights of a litigant. Hoekstra v. Helgeland, 78 S.D. 82, 107, 98 N.W.2d 669.

■ Where fixtures installed by the lessee are of such character that if attached by the owner they would constitute part of the real estate (as appears here), so far as the condemnor is concerned they must be paid for by it.[2] One text states the rule as, when the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenants. Nichols on Eminent Domain, § 5.81(2), § 13.12 and § 13.121(2), p. 377.

In Gilbert v. State, 85 Ariz. 321, 338 P.2d 787, the court, after quoting Nichols, held the inherent character of the structures was realty (as to the condemnor) regardless of the agreement between the landlord and tenant as to the right of removal.[3] In Concrete Serv. Co. v. State, 274 Cal.App.2d 142,

2. Concrete Serv. Co. v. State, 274 Cal.App. 2d 142, 78 Cal.Rptr. 923; Gilbert v. State, 85 Ariz. 321, 338 P.2d 787, and El Monte School District v. Wilkins, 177 Cal. App.2d 47, 1 Cal.Rptr. 715.

3. As the taking in Gilbert was only two days before the lease terminated, the evidence in the trial court was limited to the value of the buildings.

78 Cal.Rptr. 923, the fixtures were deemed personal property which the tenant had the right to remove. The court held they were part of the real property for purposes of condemnation, yet they were treated as personal property to permit the tenant to participate in the award.

■ Thus, it appears the courts are in general agreement that when the lease is for an extended period of time the tenant is entitled to the value of his leasehold less the rent reserved.[4] El Monte School District v. Wilkins, 177 Cal.App.2d 47, 1 Cal. Rptr. 715. The question is by what guide the value is to be determined. As appellant points out, under the prevailing view a loss of profits sustained by a lessee by reason of the taking is not recoverable as an element of damages. See 27 Am.Jur.2d, Eminent Domain, § 353. At § 292 of the same text it is said that ordinarily the lessee is not entitled to the cost of the improvements, but to the increased market value of his leasehold by reason of such fixtures. This seems to be the fair and just basis to determine the leasehold value and loss, if any, by the taking. Market value is the basis on which the condemnor was required to pay for the property as it then existed[5] with the tenant's buildings and fixtures on it at the enhanced market value which they gave to the property.

■ After the issue of "market value" of the property was determined by a jury in El Monte School District v. Wilkins, supra, the apportionment was tried to the court. Several qualified witnesses, real estate brokers, appraisal engineers, etc., gave their opinions of the fair market value or bonus value as it is sometimes referred to of the "various leasehold interests together with the improvements on the leased property." While El Monte involved short-term leases, the market value guide was approved by the court. Bales v. Wichita Midland Valley R. Co., 92 Kan. 771, 141 P. 1009, adopted the market value guide in these words:

---

4. See footnote 1.

5. State Highway Commission v. American Memorial Parks, Inc., 82 S.D. 231, 144 N.W.2d 25.

"The ordinary rule of damages for the appropriation of land for public uses * * * is the difference in market value before the appropriation and immediately thereafter. (citations) All circumstances naturally affecting this value are open to consideration. (citation) * * * Although the interest taken in this case is only a leasehold, and the whole is taken, the same rule applies, viz., the market value of the thing taken. * * * the market value of the unexpired term should be allowed, taking into consideration as elements of value the situation, condition, and use made, or that may be made, of the premises, and the nature and prosperity of the business carried on there * * *".

The recent opinion of Interstate Finance Corporation v. Iowa City, 1967, 260 Iowa 270, 149 N.W.2d 308, involved evidence of experienced lease negotiators and appraisers who gave their opinions of the value of a leasehold. There the tenant had purchased some fixtures put in by a prior tenant; the lease in effect provided that the landlord became the owner of improvements put in by the tenant. After declaring the measure of damages taken under eminent domain to be the fair market value of the unexpired term of the leasehold over and above the rent stipulated to be paid, the court, quoting from prior decisions, wrote:

" 'Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. * * * This is particularly true as applied to a leasehold. Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration.' * * * 'It is impossible to specify all of the elements that enter into such a problem. In fact all of them cannot be anticipated, and many of them are developed in the course of the litigation consequent upon the exercise of the right of eminent domain. They will vary with the character of the property affected and the uses to which the property is applied.' "

The generality of the guidelines for determining market value of a leasehold is indicated by the words in the extensive instructions to the jury. The instructions cautioned the jury to consider the items

" 'not as distinct and independent items of damage but as elements bearing upon and tending to show the reasonable market value' "

and

" 'You are not to * * * compute independent or specific items and elements of damage * * *. other facts and circumstances as shown in the evidence should be considered by you only insofar as they may bear upon the fair and reasonable value of the plaintiff's lease-hold * * *.' "

We need not stake out the limits of the evidence that is admissible to prove market value. Mobil submitted admissible proof, and, while the Foyes attack it in several respects, the objections go to the weight to be given the testimony not its admissibility.

Two witnesses who were experienced in the gasoline marketing business testified for the Foyes that a lease paying $500 a month with the gallonage sold by the Mobil station was not an economically favorable lease. Their testimony and that of Mobil's witness Hanson was subject to thorough cross-examination. Details of, and comments on, the sufficiency of the evidence would unduly extend this opinion. See Raphtis v. St. Paul Fire & Marine Insurance Company, 86 S.D. 491, 198 N.W.2d 505. Much of the evidence consisted of opinions of witnesses as to value; it differed widely, and it was for the court on all the facts and circumstances to determine the credibility of witnesses and the weight to be given their testimony. Perhaps a justice of this court would have arrived at a different conclusion as to the value of the leasehold, but that is the province of the trier of fact.

We conclude the findings of the trial court find support in the evidence, are not clearly erroneous and so cannot be set aside. SDCL 15-6-52(a).

■ Complaint is made on the receipt in evidence of Exhibit F as a business record under SDCL 19-7-11. This exhibit tended to show Mobil was making money from products other than gasoline sold through the station. The evidence of its preparation and origin was rather vague, yet it was Retail Outlet Analysis made out periodically by a district office to reflect the net profit of a service station. It was made from actual records with sales projected for two or three months. It was not error to receive the exhibit; its value as a record or projection of business was for the court to determine and for the further reason many factors considered prejudicial in an action tried to a jury will not be so held in a case tried to the court. The presumption is that the trial court did not rely on improper evidence. Sabbagh v. Professional and Business Men's Life Insurance Co., 79 S.D. 615, 116 N.W.2d 513.

The judgment is affirmed.

WINANS, WOLLMAN and DOYLE, JJ., concur.

HANSON, J., not participating.